UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KNAUF INSULATION, GMBH,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Plaintiff,　)
　　　　　　　　　　　　　　　　　)
　　　　　　vs.　　　　　　　　　　)　　　1:12-cv-00273-SEB-TAB
　　　　　　　　　　　　　　　　　)
SOUTHERN BRANDS, INC.,　　　　　　)
ALBERT A. DOWD,　　　　　　　　　)
ROSEMARY M. DOWD,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Defendants.　)
_____)
　　　　　　　　　　　　　　　　　)
SOUTHERN BRANDS, INC.,　　　　　　)
ROSEMARY M. DOWD,　　　　　　　　)
ALBERT A. DOWD,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Counter Claimants,　)
　　　　　　　　　　　　　　　　　)
　　　　　　vs.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
KNAUF INSULATION, GMBH,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　Counter Defendant.　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
ON ALL CLAIMS AND COUNTERCLAIMS**

This cause is before the Court on Plaintiff's Motion for Summary Judgment

[Docket No. 45], filed on July 1, 2014, pursuant to Rule 56 of the Federal Rules of Civil

Procedure. Plaintiff Knauf Insulation, GmbH ("Knauf") has brought this action against

Defendant Southern Brands Inc. ("SBI") to recover on a 2007 Promissory Note and on an account stated for SBI's unpaid invoices from 2008 to 2012. Knauf's action against Defendants Albert and Rosemary Dowd is to recover on a 2003 Personal Guaranty executed by the Dowds. Defendants have raised counterclaims against Knauf alleging violations of the Sherman Act, 15 U.S.C. § 1, and seeking judicial or equitable estoppel. Knauf has moved for summary judgment on all claims and counterclaims in this action.

For the reasons detailed in this order, we GRANT Knauf's Motion for Summary Judgment.

## Factual Background

Prior to its dissolution in August, 2011, SBI was a fiberglass insulation distributor located in Powder Springs, Georgia for which Albert and Rosemary Dowd served as officers. Compl. at ¶ 2–3. In the late 1980's, SBI began to purchase insulation from Knauf, a fiberglass insulation manufacturer headquartered in Shelbyville, Indiana. Compl. at ¶ 1.

Throughout their relationship, the parties developed a pattern of business whereby Knauf required SBI to execute promissory notes for past due invoices and required the Dowds to execute personal guaranties to cover SBI's debt obligations as a condition of Knauf's continued credit to SBI. This practice began in 1988 when the Dowds executed a personal guaranty for the "full and prompt payment…of all obligations of [SBI] to [Knauf], howsoever created…now or hereafter existing." Dkt. 45-4 at 43–45. Thereafter,

SBI executed a series of promissory notes secured, in part, by the 1988 Guaranty. Dkt. 45-4 at 7–39 (Notes: 1991, 1992, 1993, 1996, 1999, 2002).

In July 2003, as a condition of its continued opportunity to purchase insulation on account from Knauf, SBI again executed a promissory note ("2003 Note") which aggregated all past due invoices. *Id.* at 58. Around the same time, the Dowds executed another personal guaranty ("2003 Personal Guaranty") again covering the "full and prompt payment…of all obligations of [SBI] to [Knauf], howsoever created…now or hereafter existing." Dkt. 45-4 at 67–68. SBI satisfied the 2003 Note in August, 2006 but by 2007, Knauf claims that SBI had fallen behind on payments for insulation purchased on account by $1.8 million. In July 2007, Mr. Dowd met with representatives of Knauf to discuss the debt, and in December 2007, he executed a Balloon Promissory Note ("2007 Note") on behalf of SBI covering the full amount—$1,876,513.74. Dkt. 45-1.

Pursuant to the 2007 Note, SBI was to begin paying off the debt with a series of interest-only payments followed by a series of payments on the principal with the final payment due on May 15, 2011. Dkt. 45-4 at 78. According to Knauf, the last payment made by SBI on the 2007 Note was an interest-only payment received on October 15, 2008. Dkt. 45-4 at 80–81.

Despite SBI's delinquency on the 2007 Note, Knauf continued to sell insulation to SBI on account from 2008 to January, 2012, when Knauf finally ceased all deliveries to SBI. Dkt. 50 at ¶ 9. On January 31, 2012, in an attempt to reach an agreement on SBI's debt and in hopes of renewing their business relationship, Mr. Dowd executed a proposed

3

"Forbearance Agreement," which recited in part that the amount of SBI's outstanding account balance was $1,625,086.98, that the account balance was past due and now owing in full, and that SBI was delinquent on its installment payments under the 2007 Note. Dkt. 57-3. This agreement set forward a payment plan for the outstanding account balance along with an agreement to amend and restate the 2007 Note. *Id.* However, the proposed forbearance agreement was never signed by Knauf and ultimately the parties were unable to reach an agreement on the payment of SBI's debts. On February 1, 2012, Knauf produced an "Account Statement" for SBI's open account payable which listed SBI's unpaid invoices which had accrued from October, 2008 to January, 2012, and, consistent with the proposed forbearance agreement, reflected a total amount due of $1,625,086.98. Dkt. 57-2.

When the parties were unable to reach an agreement on the payment of SBI's debts, Knauf filed this suit on February 6, 2012, seeking to recover from SBI $1,876,513.74 (plus interest) on the 2007 Note as well as $1,625,086.98 (plus interest) on "account stated" against SBI, and to hold the Dowds personally liable for the debts under their 2003 Personal Guaranty. Dkt. 1.  Defendants filed their Answer to the Complaint on April 2, 2013, asserting counterclaims for violations of the Sherman Act and for "Judicial or Equitable Estoppel" Dkt. 16.

On July 1, 2014, Knauf moved for summary judgment on all claims and counterclaims in this case. Dkt. 45. For the reasons explained below, we GRANT summary judgment in favor of Knauf.

**Legal Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. *O'Neal v. City of Chicago,* 392 F.3d 909, 910–911 (7th Cir. 2004).

A nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 924 (7th Cir. 2004). Specifically, the nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett,* 477 U.S. 317, 322–323 (1986); *Lawrence v. Kenosha Cty.,* 391 F.3d 837, 842 (7th Cir. 2004). Denials contained in the pleadings or bald allegations that a fact exists are insufficient to raise a factual issue. *Colan v. Cutler–Hammer, Inc.,* 812 F.2d 357, 365 (7th Cir. 1987) *cert. denied,* 484 U.S. 820.

## DISCUSSION

### I.      2007 Promissory Note Claim

Knauf has moved for summary judgment on its claim to recover $1,876,513.74 based on the 2007 Promissory Note executed by SBI. Under Indiana's version of the Uniform Commercial Code, a promissory note is a negotiable instrument subject to Ind. Code § 26–1–3.1–104. *See United States v. Lockett*, 2008 WL 4936883, at *2 (N.D. Ind. Nov. 13, 2008) (citing *Payne v. Mundaca Inv. Corp.,* 562 N.E.2d 51, 55 (Ind. Ct. App. 1990)).[1] According to the UCC, a negotiable instrument may be enforced by "the holder of the instrument." Ind. Code § 26–1–3.1–301(1). The term "holder" means "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person if the identified person is in possession of the instrument." Ind. Code § 26–1–1–201(20); *see also Good v. Wells Fargo Bank, N.A.*, 18 N.E.3d 618, 621–22 (Ind. Ct. App. 2014). "The holder may recover on that instrument by producing the signed note, or a copy of the note, and proving that the note was executed and is now due and unpaid."

---

[1] Defendants argue that "[t]he statutes on which Plaintiff's Summary Judgment Motion relies apply only to claims arising from negotiable instruments prior to the effective date of Indiana Public Law 222-1993 (July 1, 1994), which repealed the statutes on which Plaintiff relies…". Dkt. 50 at 8.  The citations referenced in Knauf's opening paragraph direct us to the prior version of the UCC. However, as the court found in *F.D.I.C. v. Skotzke*, 881 F. Supp. 364, 370 (S.D. Ind. 1994), a case relied on by Knauf, "any changes in the new codification are not relevant for the purposes of the instant case." *Skotze* has continued as good authority since the enactment of the newest version of the UCC. *See United States v. Lockett*, 2008 WL 4936883, at *2 (N.D. Ind. Nov. 13, 2008). Likewise, the reasoning of *Payne v. Mundaca Invest. Corp.*, 562 N.E.2d 51, 55 (Ind. Ct. App. 1990), continues as good law since the 1994 enactment. *See Jackson v. Luellen Farms, Inc.*, 877 N.E.2d 848, 853–54 (Ind. Ct. App. 2007).

*Lockett,* 2008 WL 4936883, at *2 (citing *F.D.I.C. v. Skotzke,* 881 F. Supp. 364, 366 (S.D. Ind. 1994)); Ind. Code § 26–1–3.1–308.

Knauf has produced the signed 2007 "Balloon Promissory Note" which describes the payment schedule agreed to by SBI, beginning with a period of interest-only payments followed by a period of payments on the principal with the final payment due on May 15, 2011. Dkt. 45-4 at 78. Defendants admit to signing the Note in 2007. Dkt. 45-3 at ¶ 5. Knauf has also produced a verified listing of payments made by SBI on the 2007 Note showing the last payment as an interest-only payment made on October 15, 2008. Dkt. 45-4 at 80–81. This evidence entitles Knauf to recover on the 2007 Promissory Note. *See Lockett,* 2008 WL 4936883, at *2.

"Once the holder has met this burden, the defendant must specifically plead and prove a defense to liability to avoid entry of judgment." *Id.* (citing *Skotzke,* 881 F. Supp. at 366 and Ind. Code § 26–1–3.1–308). Defendants have not pled a statutory defense in their Answer. Dkt. 16. Instead, they advance the following argument in their response Brief:

> There is (sic) genuine issues of material of (sic) fact as to Knauf's crediting payments received from SBI to the Note, or to other claimed accounts under Knauf's obligation of good faith and fair dealing under Ind. Code § 26-1-1-203, as well as its obligation to mitigate damages. See <u>Sheppard v. Stanich</u>, 749 N.E.2d 609, 611–12 (2001).

Dkt. 50 at 9. Defendants have designated no evidence nor provided any citations to the record in support of their one-sentence defense. While it is true that contracts that fall

within Ind. Code § 26-1 impose an obligation of good faith and fair dealing and a duty on a non-breaching party to mitigate its damages, the mere mention of these rules without reference to any fact or evidence is insufficient to defeat summary judgment.

Because Knauf has designated evidence of the 2007 Note, the required signatures, and payments made and owed, and Defendants have failed to "specifically plead and prove a defense to liability," we GRANT summary judgment on this claim in favor of Knauf Insulation.

## II.    2008-2012 Account Stated Claim

Knauf also moves summary judgment on Count II of its Complaint for an "account stated." Under this Count, Knauf seeks to recover the amount of SBI's account payable which accrued between 2008 and 2012, to wit, $1,625,086.98. In Indiana, "an account stated is an agreement between the parties that all items of an account and balance are correct, together with a promise, express or implied, to pay the balance." *Jackson v. Trancik*, 953 N.E.2d 1087, 1091 (Ind. Ct. App. 2011) (citing *B.E.I., Inc. v. Newcomer Lumber & Supply Co., Inc.*, 745 N.E.2d 233, 236 (Ind. Ct. App. 2001). If the plaintiff establishes its claim for "account stated," it need not plead and prove the creation and performance of each contract comprising the account. *Newcomer Lumber*, 745 N.E.2d at 236.

As determined in our Order Denying Defendants' Motion to Dismiss, SBI maintained an open account payable with Knauf wherein SBI agreed to pay for goods

8

purchased on that account. Dkt. 14 at 18. To establish an account stated claim, Knauf must also show that there was an agreement between the parties that the account balance was correct.

An agreement that the account balance is correct may be express or it may be inferred based on delivery of an account statement and a failure to object to the amount within a reasonable time. *Jackson*, 953 N.E.2d at 1091. What constitutes a reasonable amount of time is a question for the court to resolve. *Newcomer Lumber,* 745 N.E.2d at 237; *Aufffenberg*, 646 N.E.2d at 331.

In denying Defendants' Motion to Dismiss, we explained that "[t]he record indicates that Knauf sent SBI invoices and monthly statements regarding SBI's outstanding debt and, critically, that SBI did not object to these invoices and statements within a reasonable time." Dkt. 14 at 18. In connection with this summary judgment motion, Knauf has designated its final "Account Statement" dated February, 2012, listing the charges and credits to SBI's account (Account #1010374) from October 25, 2008 to January 20, 2012, and showing a total amount due of $1,625,086.98. Dkt. 57-2. According to the affidavit of Knauf's credit representative, Bonnie Cole, who oversees the SBI account, "[a]t no time did Dowd or anyone else at SBI object to this February 1, 2012 [statement]." Dkt. 57-1 at ¶ 6. Additionally, Knauf has proffered a proposed forbearance agreement signed by Dowd on January 31, 2012, which expressly states that SBI's open account payable (Account #1010374) had an outstanding balance of

9

$1,625,086.98, and further stating that the balance was "past due and owing in full by SBI to Knauf." Dkt. 57-3.

In response, Defendants again have designated no evidence indicating any objection by them to the account balance prior to Knauf's filing suit.[2] Rather, Defendants contend that their Answer filed on April 2, 2013, constituted a timely objection to the February, 2012 "Account Statement" and provided a timely response to Knauf's Complaint under the Federal Rules of Civil Procedure. Dkt. 50-2 at ¶ 9.

Indiana courts have consistently held that when a debtor fails to object to an account statement until after the filing of a lawsuit, it will generally be considered a failure to object within a reasonable time and will support an inference of the debtor's implied agreement that the account balance is correct. *See e.g. Jackson v. Trancik*, 953 N.E.2d 1087, 1094 (Ind. Ct. App. 2011); *Auffenberg v. Bd. of Trustees of Columbus Reg'l Hosp.*, 646 N.E.2d 328, 331 (Ind. Ct. App. 1995); *Northwest Calf. Farms v. Poirier*, 499 N.E.2d 1165, 1168 (Ind. Ct. App. 1986) *reh'g denied, trans. denied.*

---

[2] Defendants have designated one Declaration made by Mr. Dowd in response to Knauf's account stated claim. In the Declaration Mr. Dowd claims that he had "repeated communications over the years with Bonnie Cole and Knauf…[to clarify]…what invoices, after the May, 2003 cut-off for invoices covered by the 2003 note, were still outstanding." Dkt. 50-2 at ¶ 5. However, Knauf's account stated claim covers debts incurred from 2008 to 2012. This means any objection raised during the "repeated communications" about the 2003 promissory note, which was satisfied in 2006, would not be objections to the account balance for debts incurred beginning in 2008. Dowd further declares that "Knauf chose to sue rather than continue the negotiation efforts, where the 'Account Statement' might have come up and where [he] would have disputed the amount." *Id.* This confirms that Dowd did not object to the amount prior to suit, and his speculation that he would have objected if Knauf had continued to negotiate is not evidence of an objection prior to suit.

The record before us reflects that the account statement was filed on, February 1, 2012, and that Knauf filed suit five days later, on February 6, 2012. Brief though this time span admittedly was, it was long enough to establish an agreement as to the amount owed between the parties relating to SBI's account. We come to this conclusion based on the fact that SBI had had an open account payable with Knauf for many years, during which period of time SBI apparently interposed no objections, as reflected in Knauf's February 2012 account statement.

In addition, the proposed forbearance agreement which Mr. Dowd signed on January 31, 2012 reflects that Defendants not only knew SBI's account balance was "past due and owing in full," but also agreed that the amount owed on account was $1,625,086.98. Dkt. 57-3. Mr. Dowd does not dispute the authenticity of the proposed forbearance agreement. Indeed, he admits that it was an attempt to negotiate a compromise so that SBI could continue to receive product from Knauf. Dkt. 50-2 at ¶ 8. This express agreement coupled with the absence of any evidence of an SBI disagreement with or objection to the amount is enough to establish an agreement between the parties as to this debt.

Two days after Mr. Dowd signed the proposed agreement, Knauf generated the February 2012 account statement reflecting an identical figure as the amount owed on account: $1,625,086.98. Dkt. 57-2. Knauf represents that the account statement was transmitted immediately to SBI's business address, and contends that SBI's failure to object to the statement prior to Knauf's filing this action supports an inference that the

11

parties were in agreement on the balance. Defendants respond that they did not receive the statement until February 9, 2012, when they were served process in this case. Despite this apparent factual conflict, it is not a material dispute affecting a resolution of Knauf's account stated claim.

Mr. Dowd maintains that even though he agreed in writing to the balance on January 31, 2012 and did not raise any objections to that amount prior to Knauf's filing suit, his April 2, 2013 Answer to the Complaint, in which Defendants "Denied" paragraphs 9, 10, 17 and 18 of Knauf's Complaint, serves as a timely objection to the account balance that suffices to overcome any inference of an agreement between the parties. We disagree. Even if Defendants did not receive the account statement until February 9, 2012, there is sufficient evidence to establish that they knew of and agreed to the outstanding balance on SBI's account payable with Knauf certainly by that time. Knauf has successfully established that the parties were in agreement on the account's balance thereby entitling it to prevail on its claim for an account stated.

Having established the account stated, the balance on the account statement—that is, the agreed upon amount of the outstanding balance—is *prima facie* proof of the amount owed on the account. *Trancik*, 953 N.E.2d at 1091–92. To avoid judgment in that amount, Defendants must establish through evidence that the account stated was incorrect. *Auffenberg*, 646 N.E.2d at 331–32. Absent that, a finding of no genuine issue of fact will ensue and Plaintiff will recover a judgment in its favor as matter of law. *Id.*

On summary judgment, SBI asserts for the first time that it paid Knauf approximately $1.3 million between October, 2008 and January, 2012, and that none of the documents Knauf has produced explain the failure by Knauf to credit these payments against the 2007 Promissory Note or to the invoices listed in the "Statement of Account." Dkt. 50-2 at ¶ 7. Defendants speculate as to the reasons for this failure by Knauf without submitting proof as to that fact or as to a plausible explanation. Defendants simply state that it "may be that Knauf has not credited these $1.3 million in payments to the invoices listed in that Account Statement, which would reduce Knauf's claimed amounts due significantly." *Id.* (emphasis supplied).

SBI's assertion is pure speculation—a clear grasping at straws by them. The only evidence designated by Defendants to support this theory is the Dowd Declaration, in which, Mr. Dowd states that between 2008 and 2012, SBI paid Knauf a total of $1.3 million dollars. Dkt. 50-2 at ¶ 7. He does not explain the reason for this payment to Knauf during this period nor does he point to anything in the record which indicates a purpose for these payments. More specifically, Mr. Dowd does not aver that the $1.3 million in payments was made directly to SBI's open account payable or that the account balance should be reduced by that amount.[3] Without actually refuting the account balance, the best Mr. Dowd can do is to speculate that Knauf "may" have failed to credit

---

[3] Notably, Defendants did not plead setoff, payment, release, accord and satisfaction, or any other affirmative defense or avoidance to Knauf's account stated claim in their Answer. See Fed. R. Civ. P. 8(c) (requiring a party to affirmatively state any avoidance or affirmative defense in their responsive pleading or waive the defenses).

payments either to the 2007 Promissory Note *or* to SBI's open account payable." Dkt. 50-2 at ¶ 7. This does not suffice to undermine the balance stated in the proposed forbearance agreement and the February account statement. Thus, because the amount owed on account has been established as $1,625,086.98 and has not been shown to be incorrect, summary judgment in favor of Knauf shall enter on this claim.

### III.    2003 Personal Guaranty Claim

Knauf's third basis for its summary judgment motion is its claim to enforce the 2003 Personal Guaranty signed by the Dowds. Knauf maintains that the guaranty binds the Dowds personally on both the 2007 Promissory Note and SBI's account stated for products purchased from 2008 to 2012. Dkt. 45 at 14. In response, Defendants advance two arguments. First, "[t]he Dowds contend that the 2003 Personal Guaranty is ambiguous…" Dkt. 50 at 11.  We addressed this issue previously in our Order Denying Defendants' Motion to Dismiss (Dkt. 14), explaining that Indiana entrusts the interpretation of contract provisions to the court, *Heritage v. Owners Ass'n v. York*, 859 N.E.2d 763, 765 (Ind. Ct. App. 2007), and that, in our judgment, "the language used to define 'liabilities' [in the Personal Guarantee] is anything but ambiguous; it reflects the Dowds' agreement to vouch for SBI as to *all obligations* of SBI to Knauf, *howsoever created*." Dkt. 14 at 20 (emphasis in original). We also regarded as "obvious…the parties inten[tion] [that] the term 'liabilities'…included several amounts: the sum due under the 2003 Note, the $1,876,513.74 (plus interest) for outstanding invoices, *and* the $1,625,086.98 (plus interest for goods purchased.)" *Id*. Defendants provide no rationale

14

why we should depart from our prior interpretation. Thus, our prior ruling that the 2003 Personal Guaranty unambiguously made the Dowds personally liable for all obligations of SBI, including the 2007 Note and the account stated, stands.

The Dowds argue alternatively that they were released from liability as guarantors based on Knauf's material alteration of the underlying obligations which was what they had guaranteed. According to the Dowds, "The 2007 Note and invoices summarized in the 'Account Statement' materially altered the Dowds' risk as guarantors, putting their retirement savings at risk of nearly $3.5 million in claims should Knauf cut off SBI's supply of insulation on credit and cause its failure." Dkt. 50 at 12.

It is not at all clear that the 2007 Note or the purchases on account materially altered the Dowds' obligations. In their 2003 Personal Guaranty, they agreed to vouch for *all obligations* of SBI to Knauf, *howsoever created*. Dkt. 14 at 20. A continuing guaranty, such as this, covers all transactions, including those arising in the future that are within the contemplation of the agreement, and remains operative until revoked regardless of time or amount. *S-Mart, Inc. v. Sweetwater Coffee Co.*, 744 N.E.2d 580, 585 (Ind. Ct. App. 2001) (citing 38 am. Jur.2d *Guaranty* § 20 (1999)).

Even if we were to assume the 2007 Note and purchases on account materially altered the underlying obligations of the Personal Guaranty, the Dowds would not be released from liability. It is true that Indiana common law provides that "when parties cause a material alteration of an underlying obligation *without the consent of the*

*guarantor*, the guarantor is discharged from further liability whether the change is to his or her injury or benefit." *Keesling v. T.E.K. Partners, LLC*, 861 N.E.2d 1246, 1251 (Ind. Ct. App. 2007) (emphasis added). But that is not what happened here. Here, the Dowds consented to the additional debt incurred by SBI when Mr. Dowd personally executed the 2007 Note and continued to purchase product from Knauf in his capacity as CEO of SBI. Accordingly, we find that under their 2003 Personal Guaranty, the Dowds are personally liable for the 2007 Note and the balance of the account stated, and GRANT summary judgment in favor of Knauf on this claim.

## IV.    Sherman Act Counterclaim

Knauf has also moved for summary judgment on the counterclaims asserted against Knauf in Defendants' Answer to the Complaint on April 2, 2013. Defendants' first counterclaim alleges that Knauf had entered into agreements with Knauf's competitors as well as with its largest customer, Masco Corporation, over a five-year period, between June 1999 and June 2004, the effect of which was to unlawfully restrain trade, in violation of the Sherman Act, 15 U.S.C. § 1 ("the Act"). Dkt. 16 at ¶ 15.

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Price-fixing agreements between competitors, known as horizontal price-fixing agreements, are the archetypal example of prohibited conduct under this section, but other agreements between competitors may also violate the Act if

16

they place unreasonable restraints on trade. *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006); *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647 (1980) (citations omitted).

Section 15 of the Act provides that a person who is injured by such agreements may bring an action for damages, but the action must be commenced within four years from the time the cause of action accrued; otherwise it is forever barred. 15 U.S.C. §§ 15(a)–(b). Generally, a cause of action accrues and the statute of limitations begins to run when a defendant commits an act that injures a plaintiff's business; if the violation is a "continuing violation," such as a price–fixing conspiracy with a series of unlawful sales, each sale starts the statutory period running again. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189–90 (1997) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)). Alternatively, the statute of limitations may begin to run upon the discovery of the injury if, despite due diligence, the injury is not discovered until a later date. *In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1014 (7th Cir. 2012).

Once the statute of limitations begins to run under Section 15 of the Act, it may be suspended or tolled, and any additional time during which the statute of limitations was tolled is added to the four-year limitations period. *Zenith Radio*, 401 U.S. at 338. The commencement of a class action, for example, suspends the statute of limitations as to all members of the putative class who would have been parties had the suit been permitted to continue as a class action. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1974).

In this case, Defendants' Sherman Act claim accrued between 1999 and 2004. Because their claims would be barred by the four-year statute of limitations, they seek to rescue their claims by relying on the commencement of a putative class action that was filed in the Northern District of Georgia in order to toll the running of the limitations period. *See Columbus Drywall & Insulation, Inc., et al. v. Masco Corporation, et. al.*, N.D. Ga C.A. No. 1:04-CV-3066-JEC ("*Columbus Drywall*"). The *Columbus Drywall* class action was commenced on October 19, 2004 against Knauf, its manufacturing competitors, and Masco Corp., and was based on an identical legal theory as the one asserted here in Defendants' Sherman Act counterclaim. Dkt. 45-6. The parties agree that as originally filed the complaint in the *Columbus Drywall* class action included SBI as a potential class member; thus, the statute of limitations was tolled for purposes of SBI's counterclaim when the *Columbus Drywall* class action commenced on October 19, 2004. *See American Pipe*, 414 U.S. at 554. Assuming this is true, the parties nonetheless disagree as to when the tolling period ended and the statute of limitations resumed running for SBI.

According to Knauf, the statute resumed running for SBI on January 27, 2006, when the plaintiffs in the *Columbus Drywall* class action amended their complaint to exclude SBI as a potential class member.[4] Dkt. 45 at 18. According to Defendants, that

---

[4] The original complaint in the *Columbus Drywall* action was commenced on behalf of "all insulation contractors and distributors who purchase residential fiberglass insulation products directly from the major manufacturers of those products sold in the United States." Dkt. 45-6. The complaint was amended on January 27, 2006, refining the class definition to include only "insulation contractors" and to exclude distributors and other non-contractor entities that may purchase insulation directly from the manufacturers. Dkt. 45-7, 45-8. SBI, an insulation distributor, was not a member of the amended class,

the statute did not begin to run again until either March 25, 2008, when Knauf was dismissed from the *Columbus Drywall* class action, or October 26, 2012, when the remaining parties' settlements were approved and the *Columbus Drywall* case was terminated with prejudice. Dkt. 50 at 17.   The date on which the statute of limitations resumed running affects the timeliness of SBI's Sherman Act claim; therefore, we must decide when the tolling of the statute of limitations ceased and began to run again.

According to the Seventh Circuit, "[t]olling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action." *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (7th Cir. 2011). This means that tolling ceases when the class action is settled, *see Villanueva v. Davis Bancorp., Inc.*, 2011 WL 10970932 (N.D. Ill. 2011), when a party is dismissed without prejudice from a lawsuit, *see Shaffer v. Combined Ins. Co. of Am.*, 2003 WL 22715818 (N.D. Ill. Nov. 17, 2003), or when class certification is denied, in which case, the excluded class members must choose to intervene in the action or file their own suits before the time remaining in the limitations period expires, *see American Pipe*, 414 U.S. 538; *Crown, Cork & Seal*, 345 U.S. at 354. Additionally, a suit's status as a would-be class action may end by choice of the plaintiff, "who may abandon the quest to represent a class or…bow out altogether." *Sawyer,* 642 F.3d at 563.  "The rationale of *American Pipe* does not permit a distinction

---

which was later certified as a settlement class of 377 contractors, nor was SBI one of the 1844 contractors sent notice of the settlements. Dkt. 50-2 at ¶ 11.

among situations in which the putative class representative gives up before, or after, the judge decides whether the case may proceed on behalf of a class." *Id.*

The question before us is whether the plaintiffs' choice to redefine their class by amending the class action complaint in the *Columbus Drywall* litigation, which dropped SBI from that group, triggered the running of the statute of limitations for SBI and any other former potential class members who were no longer within plaintiffs' class. The parties have not supplied any case law which speaks directly to this issue, and we have found none within our circuit. However, the cases we have found which address this issue hold that the tolling of the statute of limitations ends when a complaint is amended to redefine a putative class; and the limitations period begins to run again immediately for those potential members excluded from the new class definition. *See e.g., Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 581 (D. N.J. 2002); *Laydon v. Mizuho Bank, Ltd*, 2015 WL 1515487, at *4 (S.D.N.Y. Mar. 31, 2015); *Machesney v. Ramsgate Ins., Inc.*, 2014 WL 2605479, at *4 (E.D. Mich. June 10, 2014).

We agree with the reasoning set forth in these opinion and view it as consistent with the Seventh Circuit's decision in *Sawyer*. In the same sense a plaintiff may come to decide to "abandon his quest to represent a class or…bow out altogether," he may similarly decide to narrow his class definition in hopes that it will help his chances of class certification and success on the merits of his claim(s). *Sawyer*, F.3d at 563. When a purported class member ceases to be a member of the putative class, whether by denial of class certification, dismissal of a party, settlement of the case, or exclusion from the class

20

definition, tolling of the statute ceases and the limitations period begins to run immediately. *Del Sontro v. Cendant Corp*., Inc., 223 F.Supp.2d 563, 581 (D. N.J. 2002) (citing *Armstrong v. Martin Marietta Corp*., 138 F.3d 1374, 1382–83 (11th Cir. 1998).

Applying these holding to the case at bar, SBI ceased to be a member of a putative class action when the plaintiffs in the *Columbus Drywall* class action amended their complaint on January 27, 2006. For the group insulation distributors and other entities who were excluded from the amended class definition, the statute began to run immediately at that point. Ignoring any time accrued prior to the commencement of the *Columbus Drywall* class action and giving SBI the benefit of the entire four-year limitations period, it had until January 27, 2010 to either intervene in the *Columbus Drywall* case or file its own action under the Sherman Act. Thereafter, its claims would be forever time-barred.[5] Even if it were unclear whether SBI had been excluded from the putative class at the time the complaint was amended, no doubt would remain by the time the new class was certified on July 20, 2007. That date which would have allowed SBI until July 20, 2011 to raise its claims.[6] The lawsuit before us, however, was not commenced until February 6, 2012, and SBI did not assert its Sherman Act counterclaim

---

[5] Neither party has indicated the date on which they believe the cause of action originally accrued or how much time had run on the statute of limitations prior to the October 19, 2004 commencement of the *Columbus Drywall* class action. Instead, both parties have calculated four years from the date they believe the tolling of the statute ended.

[6] Dowd admits that SBI was unaware of the *Columbus Drywall* litigation until March, 2012. Because SBI was unaware of its potential membership in the class action, it would not have known the complaint had been amended to exclude distributors in January, 2006, or that a class of contractors was certified for settlement in July 2007. Dkt. 50-2 at ¶ 11.

until April 2, 2013.[7]  Thus, it is clear that SBI's Sherman Act counterclaim is time-barred

under 15 U.S.C. § 15(b), and we GRANT summary judgment in favor of Knauf

accordingly.

## V.     Estoppel Counterclaim

Finally, Knauf has moved for summary judgment on SBI's estoppel counterclaim.

In this counterclaim, SBI asserts that Knauf failed to disclose its sales to SBI in the

*Columbus Drywall* class action, and by not disclosing those sales, Knauf denied SBI the

opportunity to participate as a plaintiff in that litigation. Dkt. 16 at ¶ 29. SBI also asserts

that Knauf is now seeking to collect on sales which should have been disclosed in

discovery in *Columbus Drywall.* Dkt. 16 at ¶ 30.

Knauf rejoins that, even if it had failed to disclose its sales to SBI during

*Columbus Drywall*, such a failure is not material to this case. As Knauf points out, the

settlement class in *Columbus Drywall* did not include SBI because the plaintiffs in

*Columbus Drywall* decided to narrow the class definition from "contractors and

distributors" only to "contractors," specifically excluding entities that purchased

insulation directly from the manufacturers, including SBI. Knauf's actions had no bearing

on SBI's exclusion from the class. Knauf also explains that it is seeking payment for a

2007 Promissory Note, an account stated for sales beginning in 2008, and a personal

---

[7] SBI contends that its Sherman Act claims are compulsory counterclaims under Fed. R. Civ. P. 13(a) and should relate back to the date Knauf instituted this action. We do not need to address whether they were in fact compulsory counterclaims because the limitations period expired well before Knauf filed its complaint in this action.

guaranty for the debts—not on sales occurring between June 1999 and June 2004, which makes SBI's claims entirely irrelevant to this litigation.

Defendants did not respond to Knauf's arguments on these claims on summary judgment. In any event, there is no evidence in the record that Knauf denied SBI the opportunity to intervene in the *Columbus Drywall* litigation or that Knauf now seeks to recover on sales which should have been litigated in that case. Accordingly, we GRANT summary judgment on this counterclaim in favor of Knauf.

## CONCLUSION

For the reasons detailed above, we hold that Knauf has established its right to recover against SBI on the 2007 Promissory Note for the principal amount of $1,876,513.74, plus accrued interest through February 1, 2012 in the amount of $512,031.19, and further prejudgment interest at the rate of 18% per annum as specified in the 2007 Note.  We hold that Knauf has established its right to recover SBI on account stated in the amount of $1,625,086.98 as of February 1, 2012, plus further prejudgment interest at the rate of 8% per annum pursuant to Ind. Code § 24–4.6–1–102. We hold that under to the 2003 Personal Guaranty, the Dowds are liable as guarantors for the debts owed by SBI to Knauf. No genuine issues of material fact exist on these claims, entitling Knauf to judgment as a matter of law.

Further, we hold that Defendants' Sherman Act counterclaim is time-barred under 15 U.S.C. § 15(b), and that Defendants have failed to present any genuine issues of

material fact on their claims for estoppel. Accordingly, Plaintiff's Motion for Summary

Judgment is GRANTED on the counterclaims as well.

Final judgment shall enter accordingly.

IT IS SO ORDERED.

09/14/2015

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

24

Distribution:

ROSEMARY M. DOWD
3435 Mary L. Trali, SW
Powder Springs, GA 30127

Robert E. Rigrish
BODKER RAMSEY ANDREWS WINOGRAD & WILDSTEIN PC
rrigrish@brawwlaw.com

Anne L. Cowgur
TAFT STETTINIUS & HOLLISTER LLP
acowgur@taftlaw.com

Richard Charles Richmond, III
TAFT STETTINIUS & HOLLISTER LLP
rrichmond@taftlaw.com